IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GERONIMO GRIEGO,

          Plaintiff,

v.                                                                                                    Civ. No. 03-1417 JH/DJS

CITY OF ALBUQUERQUE, a New Mexico
municipal corporation, and JANICE
MONTOYA-ROACH, an Albuquerque police
detective, as an individual and in her official
capacity,

          Defendants.

## MEMORANDUM OPINION AND ORDER

      This matter is before the Court on two closely related motions: *Defendant City's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint* [Doc. No. 45], and *Defendant Montoya-Roach's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint* [Doc. No. 59].[1]  The issue presented in both motions is whether there is a genuine issue of material fact for trial on any of Plaintiff's claims against the Defendants.  After considering the law, the briefs, and the evidence provided by the parties, the Court concludes that no such genuine issue of material fact exists, and that both motions should be granted.

## LEGAL STANDARD

      Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"

---

[1] In both motions, the movants mix the language customarily used in conjunction with a motion to dismiss under Rule 12(b)(6) with that used in a motion for summary judgment under Rule 56.  However, because all parties have submitted and referred to materials outside the pleadings in support of their positions, the Court construes both motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

*Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998).  "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim.  *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997),

*aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense in a lawsuit brought under 42 U.S.C. § 1983. Qualified immunity bars Section 1983 suits against defendants in their individual—but not official—capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167 (1985) (citations omitted). The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citing *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989)).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). The first part of this inquiry requires a court to determine whether the parties' submissions, viewed in the light most favorable to the plaintiff, could show the officer's conduct violated a constitutional right. *Cf. id.* at 201. The second part of the inquiry requires a court to "assess[] the objective legal reasonableness of the action at the time of the alleged violation and ask[] whether 'the

right was sufficiently clear that a reasonable officer would understand that what he [or she was] doing violates that right.'" *See Medina v. Cram*, 252 F.2d 1124, 1128 (10th Cir. 2001) (quotation omitted); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted).

If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity. *See Medina*, 252 F.2d at 1128. If, and only if, the plaintiff establishes both elements of the qualified immunity test does a defendant then bear the traditional burden of showing "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Nelson v. McMullen*, 207 F. 3d 1202, 1206 (10th Cir. 2000) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)). In other words, although the court "review[s] the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Medina*, 252 F. 3d at 1128 (citation omitted). However, if the nonmoving party successfully demonstrates the violation of a clearly established right, the moving party assumes the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

## FACTS

The facts of this case, as presented in the depositions, affidavits, and other evidence on file, are undisputed,[2] and they are as follows.

---

[2] In her memorandum in support of her motion for summary judgment, Defendant Montoya-Roach set forth a statement of facts supported by evidence. In his response brief, Griego does not dispute those facts. Griego does attach his own Affidavit to his response to Defendant Montoya-Roach's motion for summary judgment. However, the Court has not considered the following portions of Griego's Affidavit because they are not based on his personal

On November 26, 2002, Agent Tim Frazier of the New Mexico Office of the Inspector General called Plaintiff Geronimo Griego ("Griego") on the telephone and asked him to come to the New Mexico Motor Vehicle Department ("MVD"). Griego complied with the request and drove to the MVD in a green 1997 Chevrolet truck ("the truck"). When he arrived, Agent Frazier handcuffed Griego and placed him under arrest, telling him that the truck was stolen. Agent Frazier then informed Griego of his *Miranda* rights and questioned him about the truck.

Shortly thereafter, the Albuquerque Police Department dispatched Detectives Joyce Montoya-Roach ("Defendant Montoya-Roach") and Gene Marquez to the MVD, informing them that Agents from the Office of the Inspector General had an individual in their custody for possession of a stolen vehicle. When Defendant Montoya-Roach and Detective Marquez arrived, they were met by Agent Frazier and another agent from the Office of the Inspector General, who informed them that they had arrested Griego for possession of a stolen truck and that they suspected Griego of involvement in a crime of identity theft. Agent Frazier said that Griego had driven the truck to the MVD that day, and that Frazier had been looking for the truck for several weeks because he had been notified that it had been stolen from Mesa, Arizona. Frazier also said that he had obtained the Vehicle Identification Number ("VIN") from the truck and called the National Crime Information Center ("NCIC"), which confirmed that it was stolen from Mesa, Arizona. Agent Frazier told Montoya-Roach and Marquez that Griego had registered the truck with the MVD.

When her conversation with Agent Frazier ended, Defendant Montoya-Roach went to the MVD parking lot to examine the truck. She obtained the VIN from the truck and ran it through

---

knowledge, are merely the assertion of legal conclusions, or contain legal argument: ¶ 3; the first and third sentences of ¶ 4; ¶ 5; all but the first sentence of ¶ 7; ¶ ¶ 10-12; the second sentence of ¶ 14.

NCIC, which confirmed that it was stolen. At this point, Defendant Montoya-Roach approached Griego for the first time. He was already in handcuffs. Montoya-Roach asked Griego if he had been advised of his *Miranda* rights, and he acknowledged that he had been so advised and that he did not wish to have a lawyer present for their conversation.

Defendant Montoya-Roach asked Griego if he understood why he was at the DMV, and he said that it was because he was in possession of a stolen vehicle, and that he did not know previously that it had been stolen.[3] Defendant Montoya-Roach then questioned Griego about the truck and how

---

[3] The record contains conflicting information on this point. On the one hand, in her November 18, 2004 Affidavit, Defendant Montoya-Roach states, "I asked Mr. Griego if he understood why he was here, and he told me because he was in possession of a stolen vehicle." Montoya-Roach Aff. (Ex. A) at ¶ 19. From this, Montoya-Roach argues that she was entitled to take that statement as an admission of guilt by Griego that supported her actions in continuing to detain him. On the other hand, in her Supplementary Offense Report (Ex. D), which appears to have been written much closer in time to the events in question, Montoya-Roach wrote, "I asked Griego if he knew why he had been detained. He said that Agent Frazier had told him the vehicle he was driving was stolen. Griego told me that he did not know the vehicle was stolen." This description of events in the Supplementary Offense Report directly contradicts Montoya-Roach's Affidavit. Similarly, in his Affidavit (Ex. 1), Griego states that he told Montoya-Roach that he understood that he was at the MVD because he had been falsely accused of being in possession of a stolen vehicle. Griego Aff. at ¶ 6. Finally, as documented in the audiotape of their conversation (Ex. C), the following exchange took place between Griego and Montoya-Roach:

> Griego: I didn't want to be here. I didn't know what this whole thing was about.
> Montoya-Roach: OK. Do you know the reason you're here?
> Griego: Now I do.
> Montoya-Roach. What are you here for, do you understand?
> Griego. The truck that I have, that I possessed, was stolen.

A short time later in the interview, Montoya-Roach said to Griego, "the reason that we're here, again, ... is that the truck you were driving today is a stolen truck," to which Griego responded, "I didn't know that." Viewing this evidence in the light most favorable to Griego, the Court concludes that Griego told Montoya-Roach that he understood what he was being accused of, but also that he denied knowing that the truck was stolen. This is consistent with Montoya-Roach's own understanding of the conversation as she documented it in her Supplementary Offense Report.

6

he had acquired it. Griego told her that he had purchased the truck for $6,500 from someone named "Jimmy" who claimed that he was selling the truck on behalf of the owner, who was in Arizona, and that Griego had financed the truck through his bank, which had provided Griego with both a cashier's check and the title so that he could register the truck with the MVD. Then, a uniformed Albuquerque police officer took Griego to the main office of the Albuquerque Police Department. Montoya-Roach called the bank, which confirmed Griego's story. Sometime thereafter, Montoya-Roach released Griego from custody (he had never been booked into jail). There is no evidence in the record as to how long Griego remained in custody at the police station—his affidavit says only that he was there "for a number of hours"—although it does appear that he was arrested and released within the same day. In addition, there is no evidence in the record as to how long it took Montoya-Roach to contact the bank to check Griego's story, or whether she continued to detain Griego after she spoke with the bank.

After she released Griego, Montoya-Roach continued her investigation of the matter. Eventually, she closed the case without forwarding it to the district attorney for prosecution. Defendant Montoya-Roach never filed a criminal complaint or an indictment against Griego, nor did the district attorney's office.

In her Amended Complaint, filed on August 3, 2004, Griego asserts claims for false imprisonment (Count I), assault (Count II), battery (Count III), false arrest (Count IV), negligent causation of arrest (Count V), negligent supervision and training (Count VI), violation of his 4th and 14th Amendment rights (Count VII), and malicious prosecution (Count VIII).

**DISCUSSION**

I.  **MONTOYA-ROACH'S MOTION FOR SUMMARY JUDGMENT**

  A. **Griego's Claims for Violation of His Rights Under the Fourth and Fourteenth Amendments**

As explained above, when a defendant raises the defense of qualified immunity, on a motion for summary judgment the plaintiff first must come forward with evidence demonstrating that the defendant has violated his constitutional rights. Only then must the Court determine whether defendant had violated clearly established law. In this case, Griego has failed to demonstrate that Montoya-Roach violated either his right under the Fourth Amendment to be free from unreasonable seizure, or his right under the Fourteenth Amendment to procedural due process.

"To be lawful, a warrantless arrest must be supported by probable cause to arrest." *United States v. Edwards*, 242 F.3d 928, 933-34 (10th Cir.2001). It is well established that an NCIC report indicating that a vehicle had been reported as stolen is sufficient to provide probable cause for an arrest. *See United States v. Shareef*, 100 F.3d 1491, 1505-06 (10th Cir. 1996) (upholding as reasonable officer's reliance on dispatcher's mistaken report of a NCIC match, rejecting argument officer should have conducted further investigation prior to investigative stop); *Duckett v. City of Cedar Park*, 950 F.2d 272, 280 (5th Cir. 1992) (holding that an NCIC computer printout is sufficient to establish probable cause for an arrest); *United States v. Roper*, 702 F.2d 984, 989 (11th Cir. 1983) (finding probable cause to arrest where officer radioed NCIC and learned of warrant); *see also United States v. Hines*, 564 F.2d 925, 927 (10th Cir. 1977) (noting that information from NCIC computer bank "has been routinely accepted in establishing probable cause for a valid arrest"). Furthermore, the record is devoid of evidence that Montoya-Roach held Griego under arrest beyond a reasonable period of time necessary to conduct her investigation or for an unreasonable time after which she

confirmed his story with the bank.  In light of the foregoing, Court finds that Griego has failed to establish an issue of material fact on the question of whether his Fourth Amendment rights were violated.

This conclusion is not affected by the fact that Defendant Montoya-Roach subsequently decided not to pursue a criminal prosecution against Griego.  "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).  *See also Summers v. State of Utah*, 927 F.2d 1165, 1166-67 (10th Cir. 1991) ("Since probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges or acquittal.") (citations omitted).

Moreover, because Griego has failed to establish that Montoya-Roach unreasonably seized him in violation of the Fourth Amendment, his Fourteenth Amendment due process claim also necessarily fails.  In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that claims of excessive force at the hands of law enforcement officers during an arrest, investigation, stop or other seizure of a free citizen should be analyzed under the Fourth Amendment, not under the substantive protections of the Due Process Clause.  *See id*. at 395.  Although the *Graham* court was specifically addressing an excessive force claim, the Supreme Court later clarified that such reasoning applies to unreasonable seizure claims in general.  *See Albright v. Oliver*, 510 U.S. 266 (1994).  In *Albright*, the Court explained that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that

9

Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395). Because the Fourth Amendment was designed to address pretrial deprivations of liberty in the criminal sphere, the Fourth Amendment, not substantive due process, must govern a "no probable cause" claim. *Albright*, 510 U.S. at 274-275. The Tenth Circuit Court of Appeals has extended *Albright*'s reasoning and holding to the procedural due process context as well:

> [B]ecause Appellant has failed to establish that Appellees unreasonably seized her in violation of the Fourth Amendment, her Fourteenth Amendment due process claims also necessarily fail. To the extent that the involuntary seizure of a person for an emergency mental health evaluation mirrors a criminal arrest, the Fourth Amendment's protection against unreasonable searches and seizures more specifically applies to Appellant's situation than the Fourteenth Amendment's general substantive and procedural due process guarantees. In this context, procedural due process affords Appellant no more protection than her right to be free from unreasonable seizure, since "[t]he Fourth Amendment [probable cause requirement] was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 868 n. 27, 43 L.Ed.2d 54. Since Appellant has not established that Appellees acted unreasonably in seizing her, it follows that she has not established that they violated her procedural due process rights.

*Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996). In light of the foregoing precedent, because Griego has not established that Montoya-Roach acted unreasonably in seizing him, it follows that he has not established that she violated his procedural due process rights.

> **B. Griego's Claims for False Imprisonment (Count I), Assault (Count II), Battery (Count III), False Arrest (Count IV), Negligent Causation of Arrest (Count V), and Malicious Prosecution (Count VIII)**

Defendant Montoya-Roach's initial argument in support of her motion for summary judgment

on these claims is that she has sovereign immunity for the torts alleged by Griego. That argument is meritless and borders on frivolous. The New Mexico Legislature has clearly and unequivocally waived sovereign immunity for those torts for acts of peace officers done in the scope of their duties. NMSA 1978, § 41-4-12.[4] However, as a matter of law Griego's tort claims against Montoya-Roach do not survive summary judgment because the present record demonstrates that there are no genuine issues of material fact, and Montoya-Roach is entitled to judgment as a matter of law.

First, the New Mexico Supreme Court held in *State v. Johnson*, 1996-NMSC-075 ¶ 16, 122 N.M. 696, that "a common-law defense to a civil wrongful arrest or a false imprisonment suit also requires only that the officer prove that he or she acted in good faith and with probable cause and therefore lawfully under the circumstances." As explained above, under the undisputed material facts in the record, as a matter of law Montoya-Roach had probable cause to arrest Griego. Therefore, she is entitled to summary judgment in her favor on his claims for false imprisonment (Count I), false arrest (Count IV), and "negligent causation of arrest" (Count V).

In New Mexico, "[t]he elements of civil and criminal assault and battery are essentially identical." *State of New Mexico v. Ortega*, 113 N.M. 437, 440 (Ct. App. 1992) (citing 6A C.J.S. Assault & Battery § 2 at 319 (1975)). According to the New Mexico Uniform Jury Instructions, the elements of assault are: (1) the defendant tried to touch or apply force to plaintiff; (2) the defendant

---

[4] The statute provides: "The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties."

11

intended to touch or apply force to plaintiff; and (3) the defendant acted in a rude, insolent or angry manner. NMRA 2005, Cr. UJI 14-301. The elements of battery are: (1) the defendant intentionally touched or applied force to plaintiff; and (2) the defendant acted in a rude, insolent or angry manner. NMRA 2005, Cr. UJI 14-320. The only allegations in the Amended Complaint regarding Montoya-Roach that relate to assault and battery is that she "made statements to Plaintiff causing him to fear an imminent battery in the form of arrest." Amended Complaint at ¶ 27. Griego neither alleges nor has set forth evidence to prove that Montoya-Roach touched him, applied force to him, or acted in an angry, rude, or insolent manner. In fact, the undisputed evidence is that Griego was already under arrest and in handcuffs when Montoya-Roach first spoke to him; there is no evidence that she ever touched or attempted to touch him in any way. Furthermore, peace officers are privileged to conduct such reasonable and necessary touching that may be incident to a valid arrest made with probable cause—the law does not permit those who have been arrested to recover in tort any time they have been touched by a peace officer and placed in handcuffs. Accordingly, Montoya-Roach is entitled to summary judgment on Griego's claims for assault and battery under Counts II and III.

      Finally, Montoya-Roach is also entitled to summary judgment on Griego's claim for malicious prosecution. In New Mexico, the tort of malicious prosecution (Count VIII) no longer exists. Instead, the Supreme Court has recognized the tort of malicious abuse of process, which merged the formerly separate torts of malicious prosecution and abuse of process. *See Devaney v. Thriftway Marketing Corp.*, 1998-NMSC-001 ¶ 17, 124 N.M. 512 (1997). In order to prevail on a claim for malicious abuse of process, a plaintiff must prove the following elements: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by

the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. *Id*. The undisputed material facts show that Griego has failed to come forward with evidence to support any element of this tort. Perhaps the most glaring omission is that of the first element, the initiation of judicial proceedings against Griego by Montoya-Roach. It is undisputed that Montoya-Roach filed no criminal complaint, indictment, or civil lawsuit against Griego, and therefore she has not initiated judicial proceedings against him. Montoya-Roach is entitled to summary judgment on this claim as well.

## II.     THE CITY OF ALBUQUERQUE'S MOTION FOR SUMMARY JUDGMENT

### A.     Adequacy of Tort Claims Notice

The City argues that the Court should grant it summary judgment on Griego's claim for negligent supervision and training (Count VI) because Griego failed to provide the City with adequate notice of the claim as required by the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, § 41-4-1 et seq. As grounds for this contention, the City points to the fact that Griego's notice does not specifically state his intention to file a claim against the City for negligent supervision and training. That argument is unpersuasive.

The relevant portion of the NMTCA, Section 41-4-16(A) specifies, in applicable part, that:

> Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to ... the mayor of the municipality for claims against the municipality ... within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

The New Mexico Court of Appeals has addressed the purpose of this section and set forth the requirements it imposes on those who would sue under the NMTCA. "The purposes of a notice

requirement are (1) to allow investigation of a matter while the facts are accessible, (2) to question witnesses, (3) to protect against simulated or aggravated claims, and (4) to consider whether to pay the claim or refuse it. The written notice required by Section 41-4-16(A) is limited to the time, place, and circumstances of the loss or injury. Nothing more is required." *Godwin v. Memorial Med. Ctr.*, 2001-NMCA-033 ¶ 80, 130 N.M. 434, 25 P.3d 273 (internal citation omitted). *See also Smith v. State ex rel. New Mexico Dept. of Parks and Recreation*, 106 N.M. 368, 371, 743 P.2d 124, 127 (Ct. App. 1987) ("the [notice] statute does not require that the notice indicate a lawsuit will in fact be filed against the state; the statute contemplates that the state must be given notice of a likelihood that litigation may ensue, in order to reasonably alert it to the necessity of investigating the merits of a potential claim against it.").

Griego's tort claims notice fulfills these requirements as set forth in *Godwin*. The notice informed the City of the time, place, and circumstances of Griego's injury, thereby allowing the City to investigate the matter properly. Certainly, the notice was sufficient to inform the City of Griego's claim of improper conduct by its police officers, and from that point the City should have been on notice that Griego could claim that it was liable for negligent supervision and training of those officers. The City points to no legal authority requiring Griego to enumerate in the notice each and every legal theory under which he sought to recover, nor is the Court aware of any such authority. Accordingly, the Court finds as a matter of law that Griego's tort claims notice was sufficient.

**B.     Claim for Municipal Liability Under Section 1983 and the New Mexico Tort Claims Act**

Griego asserts two constitutional claims against the City. First, in Count VII he claims that the City violated his rights under the 4th and 14th Amendments in violation of 42 U.S.C. § 1983 by violating his right to be free from an unreasonable seizure, and by violating his rights to procedural

due process. Second, in Count VI Griego alleges that the City is liable for negligent supervision and training in violation of both Section 1983 and the New Mexico Tort Claims Act.[5] For the following reasons, the City's motion for summary judgment on these two claims will be granted.

A municipality can only be liable under Section 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court further developed the rule expressed in *Monell*, stating "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479. The Court recognized, however, that "municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances." *Id.* at 480. But the Court emphasized that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481. Nonetheless "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.*

In providing further contours to the rules regarding municipal liability, the Supreme Court has

---

[5] Based upon the language of the Amended Complaint, it appears that Count VI contains a claim for the tort of negligent supervision and training under the state common law of negligence. Griego alleges that the City "enjoy[s] no immunity under the Tort Claims Act," had "a duty to Plaintiff and the general pubic to supervise and train law enforcement officers under their command," breach of the duty, proximate cause, and damages. Amended Complaint at ¶ ¶ 50-55. However, the City treats this claim as both state common law negligence as well as a constitutional tort. For the purposes of this Memorandum Opinion and Order, this Court does the same.

15

noted that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). In this context, "when an official municipal policy itself violates federal law, issues of culpability and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

As the City correctly points out, the Tenth Circuit has held that "[a] plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694). As the Supreme Court further explained in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989), a municipality's failure to train is in general not enough to prove a constitutional violation. Instead, Section 1983 plaintiffs can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the "moving force" behind an already established constitutional deprivation. *See id*. at 389. Therefore, Griego's negligent supervision and training claim, like his basic claims for constitutional violations against Montoya-Roach, requires a predicate showing that Montoya-Roach did in fact violate his rights under the Fourth and Fourteenth Amendments. As explained above, the Court has already found that Griego's constitutional rights have not been violated, and therefore on this basis alone the City's motion should be granted.

However, even if Griego's constitutional rights had been violated, the City still would be entitled to summary judgment. In this case, the City has come forward with no affidavits, deposition

16

testimony, answers to interrogatories, or other admissible evidence in support of its motion for summary judgment; rather, the City has merely attached copies of its general policies regarding a variety of topics, including the investigation of officer misconduct, the police oversight commission, citizen complaint procedures, officers' duty to obey their supervisors' orders and protect the Constitutional rights of others, job descriptions, investigations of violations of police department policies, supervisors' duties and responsibilities, and personnel training.  Based upon the existence of these policies, the City summarily argues that Griego cannot come forward with evidence to show that a genuine issue of material fact remains for trial—that is, that the City's training was inadequate or that the City acted with deliberate indifference in supervising its officers.  In other words, the City has "pointed out" the absence of evidence to support Griego's case, which is all it must do on summary judgment.  *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).

Griego does not dispute the authenticity of the City's policies.  However, Griego responds that "the discovery necessary before proceeding to summary judgment has simply not taken place," and that the City "has not provided, either to Plaintiff or to the Court, any evidence tending to overcome Plaintiff's allegations regarding the application of these policies and procedures to Defendant Montoya-Roach."  Griego also argues that he has not yet had the opportunity to inspect and copy certain materials identified by the City in discovery, and that "they will provide support for all Plaintiff's allegations."

These statements by Griego's counsel are tantamount to a request for relief and for additional discovery under Fed. R. Civ. P. 56(f).  To resist summary judgment on this basis, a party must specifically identify what facts it seeks to discover and show how those facts would materially aid its case on the dispositive issues. *See Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1554-55 (10th

17

Cir. 1993). However, Rule 56(f) "may not be invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986). Unverified statements in attorney memoranda, including a response opposing summary judgment, are not sufficient for a Rule 56(f) continuance. *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992). Rather, the party opposing summary judgment must come forward with an *affidavit* setting forth in detail the facts in support of its position which it believes it could obtain in future discovery. Fed. R. Civ. Pro. 56(f).

Griego has failed to meet his burden. He has not come forward with evidence to show that there is a genuine issue of material fact for trial, nor has he properly demonstrated to the Court that he is entitled to a stay of decision and further discovery on the motion for summary judgment. Griego has presented the Court with no affidavit under Rule 56(f), and he has neglected to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Instead, Griego has relied upon the conclusory allegations and contentions of counsel, and he has not produced specific factual support of his claim—all of which is insufficient to avoid summary judgment. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988).

Furthermore, the documents in the record demonstrate that Griego has had ample opportunity to obtain the information he requires and belie the need for further discovery. Griego filed his original complaint on December 12, 2003. On May 19, 2004, the parties engaged in a discovery conference in accordance with Rule 26(f), and after that date the parties were free to conduct discovery. *See*

D.N.M. LR-Civ. 26.4(a).  The record reflects that during the second half of 2004 the parties did in fact engage in both written discovery (*see* Doc. Nos. 31, 37, 40, 44, 47, 50, 55) and depositions (*see* excerpts of Oct. 25, 2004 deposition of Geronimo Griego attached as Ex. E to Doc. No. 59).  In addition, it appears from the record that no discovery deadline has ever been imposed in this case.[6]

In any event, Griego has failed to come forward with evidence that he suffered a constitutional violation, as well as evidence that the City took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Griego's claims for negligent supervision and training under the NMTCA fail for the same reasons.  Because Griego has failed to meet his burden under Rule 56, the Court finds that the City's motion for summary judgment should be granted, and his claims against the City under Counts VI and VII of the amended complaint should be dismissed.

---

[6] According to the Initial Scheduling Order entered on April 14, 2004 (Doc. No. 18), the parties should have submitted their Initial Pretrial Report ("IPTR"), which would have contained a discovery deadline, to the Court no later than May 26, 2004.  Although the record is somewhat unclear, it appears that did not happen.  On June 9, 2004, United States Magistrate Judge Don J. Svet held a Rule 16 scheduling conference.  The minutes of that conference reflect that the parties were directed to resubmit their IPTR to the Court, although the minutes do not indicate that the court imposed a deadline for them to do so.  On October 12, 2004, Judge Svet ordered the parties to submit a "revised" IPTR no later than October 26, 2004.  (Docket No. 43).  It is unclear whether or not the parties complied with this requirement.  Then, on November 4, 2004, United States Magistrate Judge Don J. Svet again ordered the parties to submit a "revised" IPTR by the end of that day.  (Docket No. 49).  However, to this date no IPTR has ever been entered, and therefore no discovery deadline has been imposed upon the parties.

**IT IS THEREFORE ORDERED THAT** *Defendant City's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint* [Doc. No. 45] is **GRANTED**, and *Defendant Montoya-Roach's Motion for Summary Judgment Requesting Dismissal of Plaintiff's Complaint* [Doc. No. 59] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**